## THURSTON vs. FOSTER.

A being engaged in transporting timber in his schooner from *Georgetown* to *New York*, in which business it was contemplated by both A and B that said vessel should continue, the former contracted with the latter, to carry freight for him in the cabin from *Georgetown* to *New York*, during the season ensuing, in payment for a quantity of rice sold him. Within the time, A offered upon two or three occasions to take freight, but B did not furnish it. Afterward, but within the time, B requested A to go with his vessel about two and a half miles up *Georgetown* river to *Kinlock's* mills, the place where rice was usually received, there to take a cabin freight; but the vessel being then deeply laden with timber, and it not being safe and proper, (as the jury found) to attempt going to the place designated with so large a vessel, laden, A declined going. *Held*, that these facts did not show a breach of the contract by A, construing the contract by the circumstances under which it was made.

*Held* also, that it was incumbent on A to do the first act; that is, to have the vessel at *Georgetown*, ready to receive the stipulated freight, *occasionally*, as the well known course of his business would allow; — and that the deposit of rice by B at *Kinlock's* mills was not a condition precedent.

Whether the *option* as to the *time when* the contract should be performed was with A or B — *quære*.

THIS was an action of *assumpsit* founded on a special contract to carry freight in the defendant's schooner *Constellation* from *Georgetown, South Carolina,* to *New York*, during the season of 1825, in payment for a quantity of rice which the plaintiff had sold the defendant. It was admitted to be understood by both parties, that the said vessel was to be employed during the said season in carrying *timber* from *Georgetown* to *New York*.

The plaintiff alleged in his writ, and proved, that in the spring of 1826, he requested the defendant to take a quantity of freight for him to *New York*, consisting of rice at *Kinlock's* mills, about two and a half miles from the village of *Georgetown*, where it was proved that vessels in the *Georgetown* coasting rice trade were generally accustomed to take in their freight, and averred a breach of the contract by a refusal of the defendant to take said freight; but offered no evidence that vessels in the timber trade, or that vessels of so large a size as said schooner ever went there; nor any evidence that he had rice at said mills.

The defendant proved that during the season ensuing the purchase of said rice, he made several trips from *Georgetown* to *New*

*York* — that he loaded said vessel each time with timber except-
ing the cabin — and that prior to the plaintiff's request aforesaid,
he the defendant, upon two or three occasions, offered the plain-
tiff to take freight for him, but the plaintiff did not furnish him
any.  He also proved that at the time of the plaintiff's request
for the defendant to take rice at *Kinlock's* mills, the schooner
was deeply laden with timber — that rice *in casks* could not
without difficulty, if at all, be got into the cabin of that vessel,
and could not be carried in the hold with timber — that the usual
cabin freight from *Georgetown* to *New York* consisted of bags
and skins — that at the usual rate of freight, the cabin, if it would
admit casks, would pay about $40 a trip — and that, in the opin-
ion of the witness, vessels of the size of the *Constellation*, load-
ed, could not go to *Kinlock's* mills.  It was in evidence also, that
rice at *Georgetown* is put up in *casks only*, except for the *West
India* market.

Upon this evidence the jury were instructed that the option as
to *the time* of performance of said contract, was with the defend-
ant, and not with the plaintiff; and that if they believed from the
testimony that the defendant did in fact offer to the plaintiff, to
take freight for him, to the extent the contract required, from
*Georgetown* to *New York*, there was in that case no breach of
the contract declared on, notwithstanding he might afterwards
have declined to take the freight when requested by the plaintiff.
The jury were also instructed to inquire, and be able to answer
on returning their verdict, whether the contract was for the trans-
portation of such freight as could be carried *in the cabin*, and
whether it would have been safe or reasonable when the plaintiff
made his said request, for the vessel to go to said mill; and also
whether the plaintiff had rice at said mills at the time of said re-
quest.

Upon their return the jury answered, that with regard to the
contract, they found that the freight was to be carried in the
cabin, as the plaintiff knew that the vessel was to be employed
in carrying timber, and in such cases a deck load is carried as
well as hold full.  The jury were also of opinion, that the refu-
sal of the defendant to comply with the demand of the plaintiff,
was not a violation of the contract, as the vessel appeared to have

been deeply laden, and from the proof, they were satisfied it would have been improper to have attempted to move her, under the circumstances, to *Kinlock's* mills. They also answered, that they were unable to determine from the evidence, whether the plaintiff had, or had not rice at *Kinlock's* mills.

If the ruling of the Judge was right as to the option of the defendant, then the verdict which was returned for the defendant was to stand, otherwise the same was to be set aside and a new trial granted, unless from the other facts found by the jury, the Court should be of opinion that the defence was otherwise maintained, in which case judgment was to be rendered on the verdict.

*Allen* and *Lowell*, for the plaintiff, insisted that the option in regard to *the time* during the season when the contract should be performed was with the plaintiff and not with the defendant; and that consequently the defendant had violated his contract by refusing to take freight when requested.

If the option be with the plaintiff, then the other facts appearing in the case do not constitute a good defence. If the plaintiff did not make a demand in sufficient season to enable the defendant to carry freight to the whole amount contracted for, he certainly did it in time to enable the defendant to carry *a part;* and surely it ought not to lie in the defendant's mouth to say that he would not perform *a part,* because he could not perform *the whole.*

In the most favorable view that can be taken for the defendant, if the plaintiff should neglect to furnish freight when the defendant was ready to receive it and he thereby suffered, perhaps a deduction should be made from the plaintiff's claim corresponding with the injury. But it should not annul the contract, and release the defendant entirely from all obligation.

But if the plaintiff is not entitled to recover *on the contract,* he is entitled, to recover under the general counts for the price of the rice sold. *Hayden* v. *Madison,* 7 *Greenl.* 76; *Abbot* v. *Hermon,* 7 *Greenl.* 118; *Keyes* v. *Stone,* 5 *Mass.* 391; *Proprietors of Lowell Meeting-house* v. *Smith,* 8 *Pick.* 178.

*R. K. Porter,* for the defendant, contended, that by the rules for construing maratime contracts, the plaintiff should have been ready to deliver freight whenever demanded by the defendant.

*Wilkie* v. *Ogden*, 13 *Johns.* 56; 5 *Dane's Abr.* 514; *Boyden* v. *Boyden*, 5 *Mass.* 67; *Robbins* v. *Luce*, 4 *Mass.* 474.

The option should be with the one who has the first act to do. Here it was necessary that the defendant should first procure a vessel, the option therefore was with him. *Bacon's Abr. tit. Elec. B.* 5 *Dane's Abr.* 359.

But if we are wrong, and the option is with the plaintiff, it is then insisted that there has been no such demand by the plaintiff as will enable him to maintain this action.

When freight is tendered, it must be at a suitable time and place. 4 *Stark. Ev.* 1398.

The opinion of the Court was delivered by

MELLEN C. J. — The *general* question reserved in this case is, whether upon the facts reported, the defendant is entitled to retain the verdict which the jury have returned in his favor; though, if the instruction of the presiding Judge was correct, there must be judgment on the verdict, without regard to the general question. Who then had the *option* as to the *time* of performance of the contract made between the parties? The Judge instructed the jury that it was with the defendant.

In payment for a quantity of rice purchased by the defendant of the plaintiff, the defendant agreed to transport freight from *Georgetown* in *South Carolina* to *New York,* in his schooner *Constellation,* in the course of the *season* following the time when the contract was made in 1825, during all which season it was understood that the vessel was to be employed in carrying timber from *Georgetown* to *New York.* The jury, upon the evidence, found and certified to the court that the freight, to which the contract had respect, was to be carried in the cabin, and that the refusal of the defendant to comply with the plaintiff's demand in the spring of 1826, was not, in then existing circumstances, a violation of the contract; as the vessel was then deeply laden with timber, and it would have been improper for her to move up the river to *Kinlock's mills,* where vessels of her size were not proved to have gone. Besides, the usual *cabin* freight from *Georgetown* consists of bags and skins; but rice at *Georgetown* is put up in casks only. It appears also that the defendant on

Thurston *v.* Foster.

two or three occasions during the freighting season, and prior to
the plaintiff's demand in the spring of 1826, he then being at
*Georgetown*, offered to the plaintiff to take freight, but the plain-
tiff did not furnish him with any.   According to the case of *Bar-
russ* v. *Madan*, 2 *Johns*. 145, the defendant was to do the *first
act* in order of time; that is, to be ready at *Georgetown* with his
vessel, as the well known course of his business would allow,
ready to take the stipulated freight; and that the deposit of rice
at *Kinlock's mills*, was not a condition precedent.   There appears
to be considerable difficulty in deciding in this particular case,
who had the *option* as to time, the plaintiff or the defendant; and
as it is unnecessary for us to decide it, we place our judgment
upon the *general ground* beforementioned.

   The contract of the parties is based on the fact that the defend-
ant, during the season in question, was to be regularly employed
in the transportation of lumber from *Georgetown* to *New York*;
that, of course, the *Constellation* could be at *Georgetown* only
*occasionally*, during the contemplated season, regularly returning
to that port, after delivering her cargo at *New York*, in order to
take in another load at *Georgetown*.   The defendant, therefore,
at *each return* of the *Constellation* to that port, complied with
his duty in performing the preliminary act on his part, by being
at the proper place, ready to receive the stipulated freight.   On
two or three of these occasions, as we have before mentioned, he
offered to the plaintiff, who was at *Georgetown*, to take freight,
but none was ready; at least none was furnished.   It does not
appear that the plaintiff ever offered, or, indeed, had any in readi-
ness, except once in the spring of 1826, and then under circum-
stances, which in the opinion of the jury, furnished sufficient
grounds for declining to receive it.   The plaintiff seems to have
been on the spot, and the defendant was there also with his vessel
as often as the parties expected and understood she would be,
when they entered into the contract.   We consider this as a cir-
cumstance of importance, leading to a satisfactory construction of
the contract, as to the nature and extent of the duties devolving
on each of them.   On the whole we think the defence is main-
tained by the evidence reported, and therefore there must be

*Judgment on the verdict.*